Good morning. May it please the court and counsel, I'm Mark Neibold representing Mr. Martinez Escobar. I'm going to mainly talk about the warrant issue in this case. There's three points I'm going to try to make in the course of my presentation. First, is that the warrant didn't establish probable cause for an anticipatory warrant. Second, the warrant can't be assessed for probable cause as a non-anticipatory warrant, and even if it could, it doesn't state probable cause. And third, this warrant certainly can't be saved under the good faith exception. As to the first issue, there is no way a reasonable judge could have concluded that there was a basis for an anticipatory search here. The warrant affidavit lays out some facts of the investigation. What's required to get an anticipatory search warrant, separate from what would be in a regular search warrant? Well, there has to be probable cause for the triggering condition, and that's what there isn't probable cause for. There's no basis to conclude from reading this affidavit that on August 19th or 20th, Jesse Garcia was going to drive from Minnesota to this so-called stash house in Wisconsin and pick up drugs. I mean, that's just complete speculation. All they do is talk about, in fact, well, there was a drug raid in St. Paul. We got a couple of pounds out of that. The informant who came out of that raid told us that Garcia's source has 200 pounds. It's somewhere, a location unknown. And really, that's about it. They don't really have any basis to think that on those two days, Garcia was going to go over there, pick up meth, and then the triggering condition would be once we stop him, we're going to try to stop him. And if we find meth, then we get to go back and search the house. I mean, that's just, it would elude any reasonable, that conclusion that that would happen just would elude any reasonable judge. Now, what was going on here was they were giving the judge one set of facts, but the officers were not. And the facts that they didn't put in the warrant were that we have a wiretap going on, and from the phone traffic we're getting, it looks like in the next couple of days he'll probably go over there. Well, they didn't put that in the warrant. Some of the facts sneak in there because you'll see on the second page of the affidavit, they talk about picking up 50 pounds of methamphetamine. Well, there's nowhere in this affidavit you could glean, first of all, that there's going to be any meth there at all, but second, 50 pounds? Where does 50 pounds come from out of this? Well, that leaked through. That got in there because the agents know that there was a phone conversation on August 18th where they would discuss 50 pounds. So that got in there, but that tells you what's going on here. They're not putting in the facts that they know that they're operating on to think that Garcia's going to go over there on the 19th or 20th. I mean, they didn't waste their time trying to get a warrant just out of the blue, hoping that Garcia would go over there those days. They had a basis to do that, to believe that, but they didn't put it in the affidavit. So there's no anticipatory condition that has the support of probable cause. Well, the anticipatory condition, as I understood, was that when they made the stop, they would find drugs in the car that could be fairly traced back to the house. Yes, but that's the problem. They didn't have a basis to get the warrant to begin with or to search the house based on finding that methamphetamine. They hadn't justified to the judge that that triggering condition was likely to happen. Since the judge did approve it, why wouldn't Leon apply? Well, Leon doesn't apply because, as the district court concluded, it doesn't matter. These officers knew all the facts that I've just discussed, and they can consider those facts. In other words, the phone conversation, talking about getting 50 pounds shortly before August 19th, and the judge says, well, the officers knew those things, so even though they weren't in the warrant, the officers were operating in good faith because they had a basis to believe that it would happen. But the officers don't get to make themselves judges, and that's what they did here. But doesn't Leon contemplate totality of the circumstances? Well, not if they're in the warrant in the supporting affidavit, but here the officers didn't do that. And then that gets us to the problem of why good, or the issue of why good faith can't apply here. I realize this court's decisions indicate that the officers can consider facts that aren't in the warrant affidavit, but that was, that had an unsupported legal basis. The first case that did that was United States v. Martin, and they cite Anderson v. Creighton. Well, if you look at Martin, when they talk about Creighton, they don't say anything about it being a civil qualified immunity case involving a warrantless search of a house by an FBI agent. Well, of course, if you're looking at a qualified immunity in a civil case, they get to consider what was in the officer's mind and the facts known to the officer. So this Anderson v. Creighton gets imported into the criminal realm in Martin. And again, there's no indication that, okay, we know that this is a civil qualified immunity case and it doesn't involve the same concerns that prompted the Supreme Court in Leon to say, well, we think we can authorize a good faith exception without the warrant process basically suffering for that. But here it is, because they're not, good faith isn't being assessed by the officer's reliance on the warrant. It's being assessed by what the officer subjectively knows and didn't tell the judge. Well, what do you want us to do about Martin? Well, I know... The opinion was not well-crafted or well-reasoned, but... Or well-founded. Well-founded. Yeah. But we've, I think the court has applied that rule now in several subsequent cases, so it's pretty well embedded in our case law. Do you see a way to distinguish any of those cases here? Are you really just saying that maybe we ought to take a look at that as a court en banc? Well, I would like to get it resolved before this panel, but unfortunately, Judge Culleton, I think you're right. And this court does have precedent that says, that holds that if there's intervening Supreme Court precedent, we can, we're not bound by current circuit rulings. Well, that would seem to include the fact that if we're not bound to uphold current rulings based on intervening Supreme Court precedent, we can also say if we misapplied precedent to begin with or didn't take it into account. I thought about that before, but I don't know if you can say, well, the first panel misapplied an old Supreme Court case, so we can, I don't know what's the intervening circumstance other than we disagree with the first panel. Well, I would just characterize it as if an intervening circumstance can justify not following panel law, then certainly preexisting law that wasn't applied could. But I realize that's a stretch. It may have to end up being en banc. But what I would ask this court is to be helpful in persuading the rest of the court to grant en banc review if that's what's going to have, if that's what's going to be necessary. I'm into my rebuttal time. I had one more quick question. Suppose they didn't put in the affidavit information that would show probable cause that Garcia was going to make this pickup. But even setting that aside, they put in enough probable cause to search the house. Yes. And therefore it isn't, looking at it that way, it really isn't anticipatory. It's just a standard probable cause to search the house warrant. If there were such probable cause, wouldn't that be valid? And was there probable cause to search the house based on what was in the affidavit? Two responses. One, this issued as an anticipatory search. It's right there in the affidavit request for anticipatory search warrant. That's how it gets assessed. They don't get to go back and say, well, now the judge can assess it as if we were just not asking for an anticipatory warrant, but as their probable cause just to go search the house. Forget about stopping Garcia and finding out. What would be the sense of saying that we suppress evidence under that situation? If they had probable cause to search the house, but they mischaracterized it as anticipatory or unnecessarily characterized it as anticipatory, what fourth amendment value would be furthered by suppressing the evidence? Because just looking at it in terms of does it state probable cause just to go straight over to Wisconsin and search the house, it doesn't state probable cause. Even if you look at it, forget about whether they had a basis to stopping Garcia. It's just too far removed, the circumstances here, from making it reasonable to conclude that there was going to be meth there. They talk about 200 pounds. They don't know where that is. They don't know if that's at the house. They admit that. They speculate that, well, there's 200 pounds out there somewhere, according to this informant. Maybe it's at the house. That's all they can do. There's just nothing to link any meth to that make it probable that it's at the house. And everything else that is discussed in the warrant is simply too far removed factually, and you can't draw any inferences from what's going on that there's going to be meth at the house. So there isn't probable cause either way, is my response. Thank you. Thank you, Mr. Nivold. I'll give you a short time for rebuttal. We've exhausted your remainder with our questions. All right. Mr. Eadie? Good morning, and may it please the Court. Counsel, my name is Keala Eadie. I'm an Assistant Federal Defender, and thank you for the opportunity to present an argument on behalf of the appellant, Jason Jackson. Before I begin, I'd like to acknowledge that his mother is here in the courtroom today supporting him. There are five issues that we raised in our appeal. Your Honor, we raised the denial of Mr. Jackson's motion to suppress wiretap evidence and the count one. We have challenged the admission of prior convictions per 404B, the sufficiency of the evidence for the verdicts on count one and count three, and also the reasonableness of his sentence. But for today, I'd like to focus my argument on the wiretap issue and the 404B issue, unless the Court has questions on the remaining issues. Specifically, as the wiretap issue, I want to jump to the government's argument in its brief as to Leon. That was raised at the very end of its brief. I did note in my reply that the government didn't raise that in its objection to Mr. Jackson's . . . oh, in its response to Mr. Jackson's objection to the report and recommendation. The magistrate judge didn't raise it in the report and recommendation, and the district court didn't raise it in the report. I also noted that the Moore case that the government relied on for this idea that Leon can save a wiretap affidavit even if it fails to satisfy the necessity requirement is not well founded because Moore was a case that challenged the facial sufficiency of the wiretap application based on the fact that the judge hadn't signed that application. Our case, in our facts, goes to one of the court edicts that requires that there be a necessity finding that's enshrined both in subsection 1C and subsection 3C of 2518 of Title 18. That is something that this Court has found to be significant in the Lomelli case. It's a case I did not cite in the brief, and I'd be glad to provide the Court that information. However, I do think it's important that the Court consider Lomelli, which is at 676 F. 3rd. 734. Lomelli concerned an argument that 2518. 1A was not met, and that is the core requirement that the wiretap application identify the law enforcement officer making the application, and this Court in Lomelli drew a distinction between that kind of insufficiency for purposes of challenging the wiretap application and the judge's failure to sign the warrant. The Court in Lomelli said that it was significant that the deficiency in Moore was on the part of the judge versus the officer in Lomelli, and significantly, this Court held in Lomelli that no wiretap applicant can, in good faith, rely upon a court order authorizing the wiretap when the applicant failed to comply with the edicts of the federal wiretap statute in procuring the order, and what that boils down to is whether someone be the President of the United States or my client, Jason Jackson, if the Department of Justice is going to seek a wiretap on that person, they need to comply with the edicts of the statutory scheme, and that is where the District Court clearly erred in finding that necessity was met in this case. As we have shown in our brief, there were a number of traditional investigative techniques that were flourishing, and the government failed in its affidavit to show that, as this Court has held, the wiretap was both necessary and reasonable. The magistrate's R&R is pretty thorough. Where does it go wrong in making an analysis as to the necessity for the wiretap? So we've identified a number of different areas, Your Honor, where the magistrate judge appeared to adopt some conclusory statements that traditional investigative techniques were going to be insufficient to serve law enforcement's interest in this case. And what's significant is that time and again throughout the wiretap application, it's noted that these techniques were actually succeeding. And in many places where the magistrate judge latched on to a shortcoming, those were simply statements that could apply in any case. Now, the government faulted us for this argument in its brief, stating that the use of such conclusory statements is something that has been allowed previously, but I think that does run contrary to the Supreme Court's holding in Khan and, I'm sorry, there's a number of Ninth Circuit cases that talk about how mere conclusions in the affidavit are insufficient to justify a wiretap order. The court reviews the affidavit and seems to believe what's being represented, and thus is making a credibility assessment of what the offices are presenting. Why wouldn't that be something that would be appropriate to give deference to the magistrate on? What are the facts that would indicate what the magistrate is being told is not true or unreliable? So the standard of review is clear error, and the court has to determine if the magistrate's conclusion was clearly erroneous. We're not disputing actually many of the facts that were adopted in the report and recommendation because the affidavit touted how so many of these different techniques were succeeding. And it's- But it also talked about how counter surveillance techniques that were being used were thwarting some of the efforts of their traditional methods. It mentions that such things as that, that would indicate perhaps there's a level of surveillance needed higher than traditional means. Yes, and I think when viewed in its totality, though the affidavit showed that this entire investigation was advancing, there was a number of leads that were showing the scope and nature of the drug trafficking organization. There was sufficient basis to continue the investigation. And it's been noted by courts of appeal that there are many cases in which a wiretap application alone without the traditional investigative techniques would not resolve an investigation. And here, the bottom line is this court's precedence holds that the government needs to show that the wiretap's both necessary and reasonable to justify this extraordinary intrusion into a citizen's otherwise private phone calls. And that wasn't met here. Turning to the 404B argument, your honor, I just want to focus on really the district court's finding that the evidence of Mr. Jackson's prior convictions from 2008 and 2009 should be admitted. What the district court did in ruling on that motion in limine was admitted four priors from three defendants in a two-sentence ruling. These priors applied to Mr. Jackson, Mr. Garcia, and Caterino-Cruz. The district court made no specific finding as to what the purpose that the government was offering the evidence for. And the district court did not find that the evidence was more probative than it was prejudicial. Now, I focused a lot in my brief on a Seventh Circuit case called United States versus Lee that lamented the lack of a record made by the district court as to the grounds for admissibility of 404B evidence. But in preparing for the argument, I came across a more recent case from 2015 out of this circuit, United States versus Turner, 781F3374, which again, I'd be glad to submit if the court would like in a 28J letter. That case really questioned this court's prior precedent that allows drug priors into conspiracy cases and questioned it by saying that that precedent shouldn't really allow trial courts to passively treat the federal rules of evidence. Specifically, the court noted that intent and knowledge are always going to be an issue in these drug conspiracy cases. And the government can't simply say, well, that's the purpose we're offering it for. Intent and knowledge is what the jury can consider this for without really saying more. This court said that 404B requires more than that. And that the trial court really should ask itself why the government is seeking to admit these prior convictions. So for Mr. Jackson, how is his 2009 conviction for possession relevant to intent to join drug conspiracy in 2015 if the only answer is that the prior conviction shows that he intended to commit another wrongdoing in the 2015 conspiracy, then the evidence is simply propensity evidence, and it's not allowed under 404B. What case would you say you think is helpful to you on that point? That is United States versus Turner, 781F3374, 2015. That's Judge Kelly writing for the court in that case, Your Honor. And really it becomes, when the government says this is offered for intent and for motive, it's kind of like dog whistle 404B. The government's offering it for those purposes without really stating exactly why the priors are relevant. And so for those reasons, we are asking the court to vacate Mr. Jackson's convictions and remand the case. Thank you, Your Honors. Thank you, Mr. Eid. Mr. Nestor. Good morning, Your Honors. May it please the court. Ms. Bell. My name is Bruce Nestor. I'm here on behalf of Caterino Cruz, who was sentenced to over 20 years in prison on the basis of hearsay statements made by his co-defendant, which were erroneously admitted by the district court. In which, even if those hearsay statements are admitted for the truth of the matter asserted in them, were insufficient to establish that Caterino Cruz ever engaged or had an agreement with Jesse Garcia to distribute a specific quantity of methamphetamine. I point out Mr. Caterino Cruz's sentence in this matter, only because I think it emphasizes what this court has recognized since 1978. That even as other courts relaxed the standards for the admission of co-conspirator statements, this court in United States versus Bell recognized that the requirement of independent evidence of a conspiracy between a defendant and a co-conspirator whose statement the government sought to admit. That that requirement of independent evidence as a precondition to admission of the statement was an important and substantial safeguard. That is particularly true in a criminal case and particularly true where such penalties can be implied, can be imposed. Now the government response to this matter argues that the statements, that the independent evidence essentially consists of, one, Mr. Garcia was a drug trafficker. And two, he had contact on one occasion with Caterino Cruz when there was surveillance conducted by the government. And it's important in terms of other cases which talk about independent evidence, that surveillance did not reveal any evidence of drug activity. Nor was there anybody inside or as part of that contact that can testify that drug activity happened on that occasion. And then the second factor is that Cruz's statements themselves as admissions of a party constitute that independent evidence. But Cruz's statements can only, are not truly independent. They only acquire meaning because they're intertwined with the statements that were made by Mr. Garcia in which Mr. Cruz never got to question or cross-examine or challenge Mr. Garcia about. And so, there's not truly independent evidence when the statements of Mr. Cruz are intertwined with the statements of Mr. Garcia. Now, I'm not sure I follow that. Cruz's statements would still be admissions, right? Yes. You could consider what Garcia said, not for the truth of the matter, but to see the context in which Cruz was making admissions. Wouldn't that be right? That is what this court, and I think you were on the panel, Your Honor, said back in United States versus Spencer, 592 F3rd 866. Now, that wasn't actually a co-conspirator case. That was a case where law enforcement was doing a controlled buy, and the confidential informant wasn't available at the time of trial. And so, the confidential informant obviously wasn't a co-conspirator because he was a government agent at that point. And Spencer said that the statements of the co-conspirator on the wire tap or the wire that he was wearing during the controlled buy could be admitted to establish context. But here, the statements that the government offered, I mean, the government cites the Spencer case for that purpose. But in its brief, it recites the statements of Garcia, not just to provide context, but as if they were actually true. You mean, but we're talking about whether there's enough evidence to show he's in the conspiracy independent of his own statements, right? That's the issue. But once it's admitted, then you can cite his statements. Substantive evidence. And that's what I think is what's bootstrapping the admission is that you're then using Mr. Garcia's statements and the truth of those statements to explain and amplify whatever Mr. Cruz's admissions might be. So it would be our argument that the mere fact that Garcia is a drug trafficker and that Mr. Cruz is talking to a drug trafficker, that even if you look at Mr. Garcia's, I'm sorry, Mr. Cruz's statements and you don't consider the truth of Mr. Cruz's statements as independent evidence. There's- Not independent or it's not sufficient? It's not substantial independent evidence, not sufficient to justify the admission. Do you agree it can be considered, we're just talking about whether it's enough to be sufficient, yeah, okay. That's correct. It is, we agree that Mr. Cruz's statements are admissible and would be independent of the co-conspirator statements. What about, wasn't there some other GPS type evidence and surveillance and so forth? There is a claim in the government's brief, I believe, that GPS showed that Mr. Garcia went to Mr. Cruz's residence, I think in May and June of 2015. There's no indication that Mr. Cruz was present at that point in time. There was no surveillance conducted. I think they just had a tracker on Mr. Garcia's vehicle. There was other evidence at trial that Mr. Garcia was involved in a drug conspiracy with a stepdaughter of Mr. Cruz who lived at that residence. And so there, but there's no evidence that Mr. Cruz was present. The only physical meeting between Mr. Cruz and Mr. Garcia was a single incidence of surveillance where the government followed Mr. Garcia. The trial testimony indicated no agent saw anybody carry anything in or carry anything out in terms of drugs or money or, and there was no one inside to testify what the nature or purpose of that meeting was. I believe the government represents that there may have been as many as three physical meetings between Garcia and Cruz based on tracking data. I think that's what I just summarized, Your Honor, was that there was one meeting that there was testimony that they surveilled and saw Mr. Cruz actually go to Mr. Garcia's home. The second was that there was a reference in the brief to GPS tracking that Mr. Garcia was present at Mr. Cruz's residence. But there's no evidence that they actually met. They just- Well, there's circumstantial evidence since it's Cruz's home and he was seen meeting with him on another occasion. So one might reasonably infer the argument, I suppose, would go that when he went there, he was meeting with Cruz at Cruz's house. You could, except there was this clearly a more substantial relationship with the stepdaughter, but- The stepdaughter involved with Cruz, too? There was no evidence of that introduced at trial. Okay. And so even if there might be some evidence of that, all that does is mere association between Mr. Cruz and Mr. Garcia. And so to move on from the question of the admissibility of co-conspirator statements, there was a second co-conspirator statement by Mr. Garcia that was admitted where he's speaking to an unidentified male who the government believes was located in Mexico. And in that statement, he talks about, I'm dealing with some other dudes doing tenor to time, or tenor to time for cash money. And that really also relates to the third argument, because that's really cited by the government as proof of the quantities involved. That's almost the only proof of quantities that the government offers. And it would be our argument that that statement is not in furtherance of a conspiracy. When Mr. Garcia makes that statement to the unidentified male in Mexico, it's not in furtherance of any conspiracy with Mr. Cruz. The government says, well, Mr. Cruz wanted Mr. Garcia to get drugs from other people, so they're all part of one conspiracy. That would basically be akin to saying that all drug dealers are in a conspiracy with each other because they all want drug users to be out there buying drugs. There's just no evidence that there was a conspiracy between Mr. Garcia and the unidentified male in Mexico. Thank you. Thank you, Mr. Nestor. Ms. Bell? May it please the court, counsel. I am Leanne Bell, and I represent the United States of America in this appeal. I also represented the United States in the trial court below. This morning, I plan to address a few of the points raised by defense, primarily issues that came up in their reply briefs and here today. Then, of course, I'll answer any questions from the court. The issues I plan to address are the anticipatory search warrant, the issue of wiretap necessity, and the co-conspirator statements. With respect to the anticipatory search warrant, Mr. Nievold started out discussing the fact that no reasonable judge could find probable cause in this anticipatory search warrant, and the fact of the matter is that three judges so far have concluded that there was probable cause in that search warrant. The original signing judge out of the state of Wisconsin, the federal magistrate judge, and the district court judge. And in light of the fact that three judges have concluded that there was probable cause in that warrant, it is eminently reasonable for Investigator Bauer of Pierce County, Wisconsin, the affiant of this warrant, to have reasonably relied on the face of that warrant in good faith. And so the government's position is not only is there probable cause, but that the warrant itself on its face without doing the analysis under Prel with the additional information known to the officers, that just on the face of that warrant, the officer acted in good faith. What would you say is the probable cause? What's the information in the affidavit that shows probable cause to believe that Garcia will travel to the house on August 19 or 20 to pick up 50 pounds of meth? So as I set forth in my brief, the search warrant sets out sort of a pattern of Garcia engaging with individuals who ultimately are living at this house in Wisconsin, Andrade and Noyola, or as they knew at the time, Rojas Andrade and Hernandez Garcia. And sets out that he has been meeting with them to exchange money, and then there's information that he's getting drugs shortly thereafter, and then meeting, and then again, that Noyola, who's Yonatan Hernandez, and another Hispanic male who turned out to be Martinez, went and wired money to a third co-conspirator out of state at the Walmart. And so it's a position of the government that when you look at the totality of the warrant, that pattern that's in the warrant, and Garcia's interactions with those folks, that there is probable cause that he will travel to that house again. Now, I do concede that there is, the source is not in the warrant, the source of that information. The officers say based on information gathered during the course of the investigation. And of course, we know now that it was because there was a wiretap, and there were concerns about putting information from a federal wiretap in this state search warrant. But the fact of the matter is, on the face of the warrant, based on what was in there, that the officer acted reasonably in good faith. With respect to the argument, so assuming that on its face, there isn't good faith, which I think there is. But assuming that there isn't, and we reach the issue of the addition of evidence, I'd like to address the argument by defense counsel that Prel or Prohl is in conflict with Leon. They're not in conflict when you look at them. Because what Leon says is, we're going to look at whether or not an objective reasonable officer would rely on this warrant, on the signing judge. Then I kind of refer to that as the hypothetical reasonable officer. Prohl says, we're not going to make inquiry into the subjective beliefs of the officer about the reliance on the warrant, but we are going to consider what the officer knew. And in this case, what the officer knew was that a wiretap call had been recorded, which said that Jesse Garcia was going to be traveling to the Wisconsin Stash House. And so Prohl isn't changing Leon or in conflict with Leon. You're still examining the officer's good faith through the lens of that reasonable officer, but you are adding factual information, not subjective belief, but factual information consistent with this court's precedent. And so the district court didn't abuse its discretion in making the decision that, in fact, the good faith exception applied, given the facts that it had before it that it found. Now, with respect to the wiretap necessity. Does any other circuit follow this Martin rule that our circuit follows? It does, Your Honor, and they're listed in my brief. I believe the two circuits that do not are the ninth and the sixth, and then the seventh, the eleventh, and I think the fourth. Yeah, I didn't read those other circuit cases yet, but do they, you know, Mr. Nievold says, well, Floyd Gibson's opinion just cited Anderson against Creighton, which is not really on point, and therefore there's not a good rationale in our circuit for this rule. Do the other circuits describe it in a way that would be helpful, do you think? You know, I didn't trace back sort of the etymology of the other circuits. I think that when you, I think Mr. Nievold's argument is there's this conflict between Leon and between the idea that you can have additional information known to the officers, and I just don't think that there's that conflict. I don't think Leon was setting up a conflict. He points to footnote 23 in Leon, which talks about the fact that the court says we're not going to ask district court judges all over the country to engage in a series of hearings attempting to ferret out the subjective intent of every officer with respect to every warrant. The court can do that analysis without holding the hearing because we're going to use an objective reasonable officer standard. I don't think that's in conflict with those circumstances when there are facts known to the officer objectively, that an objective reasonable officer, had they known those facts, would have found it would have been a reasonable reliance. The argument is what he knows and what didn't submit to the magistrate doesn't really relate to whether it was reasonable to rely on the judgment of the magistrate. Because if the magistrate didn't know that, if the magistrate wasn't considering that information when the magistrate issued the warrant, so how does what the officer knows separately support relying on the magistrate's judgment? Well, I think it supports the officer's good faith that if an officer had known what this person had known in writing the warrant, that this was a wiretap source for this fact, it would have been objectively reasonable. I suppose you could say, well, the officer knows the magistrate judge thought there was enough based on what we told him alone, and we know we have even more, so... Right, I mean, I think there... Why it's reasonable to rely on the magistrate, because we know it's even better than what we gave him. Correct. That's certainly one possibility. Well, we'll look at it. All right. Now, turning to Mr. Jackson's argument related to a wiretap necessity, he correctly stated that this court is conducting a clearly erroneous review of the district court's findings related to that necessity, and there was extensive writing done by the magistrate judge and adopted by the district court in this case about the necessity. And I would just point out sort of a simple point, I think, but that any wiretap application is going to have some investigative success. You're required to have probable cause. And so there has to be at least that level of investigative success to get the wiretap in the first place. And so to say, as I think, really, Mr. Jackson's argument boils down to that claiming any pre-wiretap investigative success negates necessity just simply can't be true. You have to have probable cause. And so you have to have had some investigative success in order to get the wiretap in the first instance for probable cause. And I would point out just a couple of things. I think Mr. Jackson... As I understand the argument, was it not only was there some success, but the success was fruitful enough that had they simply continued with traditional methods, a wiretap would have been unnecessary? I think that's maybe step two of the argument. And I disagree. When you look at the actual wiretap affidavit, for example, Jackson points to controlled buys, that there was a controlled buy done by CS1. If you look at the wiretap affidavit, it explains CS1's position with respect to the conspiracy, namely that CS1 was able to make a buy, but was losing the trust of the organization and was not able to introduce new people, was not able to introduce undercover officers, for example, and couldn't get above the level of people that CS1 knew in the conspiracy. So he had an in to get into a certain level. He was able to do a buy from Jesse Garcia, but had no way to learn the source of Jesse Garcia's methamphetamine or multiple sources, as it turned out. No way to get information about the distribution network that Mr. Garcia was using, because the CS was connecting with Mr. Garcia directly. And so if you look at the wiretap, one of the things that you have to look at is what are the goals of the investigation when you're evaluating necessity? This investigation wasn't to prosecute Jesse Garcia for a single controlled buy. This investigation involved determining the source of that methamphetamine, the larger distribution network, any money laundering activities that were taking place. And so because that was the goal, the stated goal and the ultimate goal in this investigation, the view, the lens with which we view necessity is not so narrow. So that's the, I would use controlled buys as an example. The informant had done the controlled buy in this case. And so when we look at the broader purpose of the wiretap, which is to learn far more than just Jesse Garcia, the fact of the matter is the affidavit goes through each of those techniques, talks about what was done. I think the other place that I take issue with defense argument is that there were just mere conclusory statements. There certainly were statements about why the techniques frequently don't work, but this wasn't an instance where the officer simply just said, we don't do surveillance because people conduct counter surveillance. The affidavit actually sets forth multiple days of surveillance and specifically details why surveillance was ineffective with this particular organization. And so that's not a boilerplate statement. That's not a generic statement. That's specific to this case. And I think if you look at the affidavit, as did the magistrate judge, you'll find that those points are laid out with respect to each technique. With respect to the good faith issue, the district court and the magistrate judge did not deal with good faith with respect to the necessity requirement, largely because they found it was met and didn't deal with it. The government did raise good faith in its initial response. That's at district court docket 425. And then when the district court issued its ruling and the defendant objected, he simply refiled the brief or it was about two pages that he had filed initially. And the government said, there's nothing additional to respond to. You haven't identified anything that the district court got wrong, either factually or legally. And so the position of the government still stands that the wiretap should not be suppressed. So good faith wasn't frankly considered by the district court because they found that the necessity requirement was more than met in this case. That said, this court can certainly consider it. And I'm not entirely sure why from a principal perspective, why Leon wouldn't apply to necessity much like probable cause. Necessity is an important and critical part of the wiretap affidavit. It's certainly a substantive part of it. And from the perspective of the goals of suppression and the goals of Leon and the purposes for applying the good faith exception, there's certainly no reason that the government can conceive of why that would not apply to necessity. Very briefly with respect to the admission of the prior convictions. Defendant, this is the first I'm hearing about the issue with the length or depth of the court's order on 404B. Mr. Eade was not trial counsel below. We did have argument on this. The government submitted written motions I don't have those here because I frankly didn't know that one of the issues was going to be the brevity of the district court's response. It's not raised in either the original brief by Mr. Jackson or the reply. But in any event, I can tell the court that there was argument had on the 404B and the government submitted a written notice the 404B. With respect to Mr. Cruz. So what was back to Jackson on the 404B? What was the government's representation of the relevance of the old drug charges? So the government offered it for intent and knowledge. Intent and knowledge of what? Of drug trafficking activities. So Mr. Jackson had a prior federal drug conviction for which he was actually on supervision at the time of this offense. And then he also had, while he was on pretrial release on his first federal case, he got his Hennepin County possession of methamphetamine conviction. So the government offered those convictions as to the intent and knowledge of Mr. Jackson. The issue in this case. How is that relevant to the charge at the time? Mr. Jackson's. Why couldn't you prove the charge without any reference to those prior crimes? I think we did prove the charge without any reference to the prior crimes. I think that the district court was considering the defense that was raised by Mr. Jackson was in essence. I didn't know anything about any drug trafficking. I don't know anything about any drug trafficking. That's Mr. Garcia's business. And I'm, I'm, that's not my world. And so the district court was aware of that. The district court, of course, was aware of the precedent in this circuit related to knowledge and intent. When you're talking about drug trafficking activities of someone. So that's what. What do you mean? I don't know anything about drug trafficking. That was it. So the argument usually when there's a knowledge argument, it's I knew that what I possessed was cocaine or something like that. You seem to be saying it's some broader concept of knowledge in this case. Well, so this was a wire. The purpose of the agreement that I was joining. Well, you know, you have to prove that in a conspiracy case, but you say I didn't know anything about drug trafficking. That's Mr. Garcia's world. Is that really the how it was argued? Well, how Mr. Jackson had a number of telephone calls with Mr. Garcia. And during the calls, of course, they didn't say the words methamphetamine. Instead, they talked about things like I have all of my money towards I have all of my all the money towards the debt. And Jackson argued, well, you don't know what that debt's for. The debt could be for anything. And then he says, I have all the money towards the debt and some. He says, well, it's all about some other object or some other unknown thing. And when Mr. Jackson is talking and then later when Mr. Mr. Garcia calls Mr. Jackson and says they have 50 pounds, they want us to get our hustle on. The argument was that that was Mr. Garcia's business. That was what he was doing. And he was just telling Mr. Jackson sort of. I don't really know. I can't articulate the argument very well, but just sort of sharing. And so the what were you trying to prove that Jackson knew? That he knew that the information that he was being that was being shared, that he had an understanding of why that would be shared, what why that would be important for Jesse to share that with him, Mr. Garcia. Now, turning to Mr. Cruz. To be clear, the government is not offering the co-conspirator statements themselves for the truth, but we are offering them for context  And I think we agree that Mr. Cruz's statements are admissible. I think we also agree that the case law allows us to look at the context of the conversation to determine what Mr. Cruz is, in fact, saying to Mr. Garcia and what his his statements mean. Wait a minute. Why do you say you're not offering what Garcia said for the truth of it? I mean, if it's if it's a non hearsay co-conspirator statement, then it is admissible. So the truth. I'm sorry. I was addressing the issue of the admissibility of the co-conspirator statement in the first instance. All right. And figuring out whether it's admissible, you can't rely on what. Correct. Garcia said. Correct. But you can rely on what Mr. Cruz said and you can use what Mr. Garcia said for context. So, for example, Mr. Cruz's admissions are admissible. And Mr. Cruz said things like, are they paying or what? When they run out, I'm your man. Don't forget. I'm checking on how you're doing. And when we look at things, the context of the conversation. So, for example, on August 13th, Mr. Cruz says, I'm checking on how you're doing. I called to check on how you're doing. And Mr. Garcia then went through a litany of why his drug business was struggling. He'd had some folks who'd been arrested and some other challenges. And Mr. Cruz says, OK, well, I'm just checking on you. I'll talk to you when you're ready. The context of Mr. Cruz's statement. OK, I'm just checking on. I was just checking on you. He's accepting the information from Mr. Garcia. He's not challenging the information from Mr. Garcia. Like, why are you telling me this? So that's Cruz's admission that that information is the information that he was seeking from Mr. Garcia. Additionally, I'd just like to point out, there's not a single statement or a single act or a single piece of evidence that by itself shows the existence of a conspiracy. It is the totality. And that's what the district court looked at in doing its analysis. The district court looked at, frankly, just the number, the fact that there were calls themselves separate from the content, just that Jesse Garcia is communicating with this individual. It's a piece of evidence that the court can consider in determining whether they have a conspiracy. When Cruz asks, are they paying or what? That's a statement by Mr. Cruz that can be used to determine that Mr. Cruz is making inquiry of Mr. Garcia about whether or not he is getting paid. And it is important that Mr. Garcia was shown during the trial through a variety of non-coconspirator statement evidence. In fact, he was a significant methamphetamine dealer that colors the relationship between he and Cruz, given the statements that were made. The court asked Mr. Nestor a couple of questions about whether the stepdaughter and Mr. Cruz sort of were together on the day that Mr. Cruz traveled to meet with Garcia August 16th. The stepdaughter was with him during that particular trip. And I'd also point out in the record, there's lots of instances like this, which are subtle, but were also before the district court. When Cruz and Garcia are discussing meeting, Cruz says, should I come to Coon Rapids? Should I come to Coon? Well, there's been nothing in any of the earlier intercepted calls, which would explain how he knows that. And so the judge could reasonably infer that he's been there before, that he knew where it was he was supposed to go. He didn't say, can I have your address? Where are you supposed to be? And so all of the information, Mr. Cruz's statements, the activities that they undertook, the nature of their relationship that could be gleaned from the admissible non-hearsay calls showed that the district court did not abuse his discretion in finding that there was a conspiracy in this case. The last point that Mr. Cruz addressed was the admission of a statement between Mr. Garcia and the Mexican source. And points out that that was that Mr. Cruz was not in a conspiracy with the Mexican source. And I beg to differ with that. There was a relationship between them. They were aware of each other's existence. Mr. Garcia, in fact, told each of them specific details about each other's existence, including the quantity of drugs that he was receiving from each of them. There was a familial relationship. Neither one of them objected to or raised any issues with the fact that Mr. Garcia was using them in this sort of interdependent way. And in fact, that interdependency was explained by Mr. Garcia in his own words in the recorded calls. And then last, I would just point out that Mr. Garcia, the statement that was admitted to the Mexican co-conspirator, Mr. Garcia's statement was nearly identical, almost word for word, to the statement he made to David Bennett, who was in the conspiracy and had received drugs supplied by Caterino Cruz. And so the statement itself is not a hugely significant piece of evidence in light of the fact that Mr. Garcia made that statement to another person who was in that conspiracy and was not in the alternate source of supply group. Thank you. Thank you, Ms. Bell. Mr. Nievold, we exhausted your time on your first round, but I'd like to give you another minute and a half to thank you for your rebuttal. I'd like to address a question Judge Culleton asked Ms. Bell, which is, do these other circuits that have said information outside the warrant can be considered by the officer? Do they provide any sort of valid rationale for allowing that? No, they don't. I mean, in the time I have, I can't go through all of them, but McKenzie Good is one of the cases the government cites as a circuit allowing the officer to consider facts outside the affidavit in determining whether the search is proceeding on the warrant is legal. And, you know, there's some equivocation here. They cite in McKenzie Good the statement that the question is whether a reasonable, reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. And that's from Leon, all the circumstances italicized. Well, if you go to Leon and that's in footnote 23, you see what they're talking about there, not as the concept that, well, we have this rule that you have to rely on the warrant, but you get to consider things outside the warrant as well. Well, if you read footnote 23, that's absolutely not what they're talking about. They're saying, well, maybe if the officer knows that another magistrate previously rejected this warrant that I'm now trying to rely on, they're not opening the door to this broad assessment or inclusion of everything the officer knows that wasn't in the warrant. And then the other thing about McKenzie Good is one of the cases it cites on for its decision is this circuit's decision in the United States versus Marion. Well, Marion is one of the cases that's in that chain going from Martin adopting Anderson v. Creighton's reasoning and then going forward to the parole decision. So Marion is not a valid basis for that rule either because it's subject to the same argument I've made here. So I think if the court reads those other cases, you'll see that the rationale there is simply, well, we just want to expand Leon. And that's unfortunately a tendency we see that a rule comes out and then the government just keeps wanting to push it further and further. Thank you. Thank you, Mr. Nievold. Mr. Nesta. Thank you, Your Honor. I just want to speak briefly to the drug quantity issue. Mr. Caterino-Cruz was convicted of an offense that triggers a mandatory minimum of 120 months. Is this rebuttal to something the government said or? It did speak to drug quantity and the proof of it. And that's what I'm speaking to, is whether there was proof beyond a reasonable doubt of a specific drug quantity. So for purposes of my argument right now. Sentencing, you mean? This is in the trial. Yes. And this is for the jury verdict too, the special jury verdict. 500 grams or more. Correct. And even assuming that Mr. Garcia and Mr. Cruz were involved in a drug conspiracy, the only evidence of quantity is Mr. Garcia's statements to Mr. Bennett and to this unidentified Mexican male. I was working with some other dudes getting tenor to time. Doesn't use Mr. Cruz's name. Doesn't specify a date or a place where he met with this other dude to get his tenor to time that could be corroborated by surveillance or law enforcement observation. So I'm willing to say there's some suspicion or even, you know, that Mr. Cruz was this other dude if you assume he was an alternate supplier. The government's own agent said drug dealers often lie and they often have multiple sources of supply. There's nothing that points to Mr. Cruz being that source of tenor to time even if you want to believe that that co-conspirator or hearsay statement by Mr. Garcia is true. There's simply not proof beyond a reasonable doubt of drug quantity for purposes of the mandatory minimum. Thank you, Mr. Nestor. Court wishes to thank all counsel for your presence in providing argument to the court this morning, the briefing that you've submitted. Court also wishes to make note that Mr. Nievold and Mr. Nestor have represented their clients here under the Criminal Justice Act and court expresses our appreciation to you for your service in that regard. Consider the case submitted will render decision in due course. Thank you.